IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JANE VOE #2 as Personal Administrator of the Estate of JOHN VOE #2, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. No. 09-543-SLR |
| THE ARCHDIOCESE OF MILWAUKEE, BROTHERS OF THE GOOD SHEPHERD, OUR LADY OF DIVINE PROVIDENCE ROMAN CATHOLIC CHURCH, ST VINCENT DE PAUL ROMAN CATHOLIC CHURCH, and BROTHER DAVID NICKERSON, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Thomas C. Crumplar, Esquire, and Robert Jacobs Esquire, Jacobs & Crumplar, P.A.; Thomas S. Neuberger, Esquire, The Neuberger Firm, P.A.: Counsel for plaintiff Jane Voe #2.

Stephen E. Jenkins, Esquire, and Toni-Ann Platia, Esquire, Ashby & Geddes: Counsel for defendants The Archdiocese of Milwaukee, Our Lady of Divine Providence Roman Catholic Church and St. Vincent De Paul Roman Catholic Church. Penelope B. O'Connell, Esquire, Elzufon Austin Reardon Tarlov & Mondell, P.A.: Counsel for defendant Brothers of the Good Shepherd.

**MEMORANDUM OPINION**

Dated: March 31, 2010
Wilmington, Delaware

*[signature]*
ROBINSON, District Judge

## I. INTRODUCTION

John Voe #2 brought this suit in the Superior Court of the State of Delaware against the Archdiocese of Milwaukee ("the Archdiocese"), Our Lady of Divine Providence Roman Catholic Church ("Our Lady of Divine Providence"), Saint Vincent De Paul Roman Catholic Church ("St. Vincent De Paul") (collectively, "Wisconsin defendants"), the Little Brothers of the Good Shepherd ("BGS"), and Brother David Nickerson ("Nickerson") (collectively, "defendants"), seeking monetary damages for personal injuries arising from childhood sexual abuse by Nickerson. (D.I. 1, ex. A at ¶ 1; D.I. 14 at ¶ 1) On July 24, 2009, the Wisconsin defendants and BGS (collectively, "moving defendants") removed the action to this court. (D.I. 1; D.I. 1, ex. B)

Moving defendants now request dismissal of the complaint. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons that follow, the motions shall be granted.

## II. BACKGROUND

### A. Filing of the Current Suit

On June 29, 2009, John Voe #2 approached the law firms of Jacobs & Crumpler, P.A. and the Neuberger Firm, P.A. (collectively, "the Firms"), about filing a lawsuit under the Delaware Child Victim's Act 10 Del. C. § 8145 (the "Act"). (D.I. 34 at ¶ 2) Since the window provided by the Act was set to close on July 9, 2009, the Firms agreed to file the case before the deadline expired to preserve John Voe #2's rights. (*Id.*) On July 16, 2009, the Firms were informed that John Voe #2 died unexpectedly on July 8, 2009. (*Id.* at ¶ 3) On August 11, 2009, Jane Voe #2, the sister of John Voe #2, was

appointed administratrix of the estate of John Voe #2 (hereinafter, "decedent"). (D.I. 14 at ¶ 1; D.I. 34 at ¶ 3) Jane Voe #2 informed the Firms that she desired to continue the action, thus, a motion to amend the complaint substituting her as plaintiff was filed on August 26, 2009, and granted by the court on September 16, 2009. (D.I. 14; D.I. 34 at ¶ 4) On September 18, 2009, plaintiff filed an amended complaint against all defendants. (D.I. 26)

## B. The Parties

Plaintiff is currently a resident of Delaware. (D.I. 26 at ¶ 2) Decedent was a resident of Delaware at the time of his death and at the time of the filing of the current suit. (D.I. 1, ex. A at ¶ 2) Decedent is alleged to have suffered abuse from ages fourteen through twenty-two at the hands of defendant Nickerson. (D.I. 26 at ¶ 2)

BGS is a religious non-profit entity incorporated in the State of New Mexico with its principal place of business in Albuquerque, New Mexico. (*Id.* at ¶ 4; D.I. 18 at 2) BGS is alleged to have been responsible for hiring and supervising Nickerson as its employee and agent. (D.I. 26 at ¶ 5) The Archdiocese is a Roman Catholic religious enterprise incorporated in Wisconsin with its principal place of business in Milwaukee, Wisconsin. (*Id.* at ¶ 6) Our Lady of Divine Providence is a private religious institution incorporated in Wisconsin with its principal place of business in Wisconsin. (*Id.* at ¶ 7) Our Lady of Divine Providence is being sued as successor in interest to Saint Casimir's Roman Catholic Church ("St. Casimir's"), which merged with Saint Mary of Czestochowa in 2003 to form Our Lady of Divine Providence. (*Id.*) Our Lady of Divine Providence is a parish under the Archdiocese and is alleged to have been responsible for hiring and supervising Nickerson as its employee and agent. (*Id.* at ¶¶ 7, 9) St.

Vincent De Paul is a private religious institution incorporated in Wisconsin with its principal place of business in Wisconsin. (*Id.* at ¶ 8) St. Vincent De Paul is a parish under the Archdiocese. (*Id.*) Nickerson is alleged to have been a brother in BGS and employed by the Archdiocese and BGS at all relevant times, as well as working at St. Casimir's school and church. (*Id.*)

### C. Alleged Acts of Abuse

Decedent allegedly met Nickerson through a mutual friend. (*Id.* at ¶ 27) Plaintiff asserts that, each time Nickerson visited the mutual friend in Delaware, decedent was sexually assaulted, abused, raped and/or molested by Nickerson. (*Id.* at ¶¶ 1, 28) The abuse is alleged to have occurred between 1974 and 1982 when decedent was between the ages of fourteen and twenty-two. (*Id.* at ¶ 26) Plaintiff asserts that decedent was abused at least fifteen times during the eight year period. (*Id.* at ¶ 29)

### D. Moving Defendants' Relationships to Acts of Abuse

Plaintiff alleges an agency relationship between Nickerson and moving defendants. (*Id.* at ¶ 33) It is asserted that Nickerson was employed by the moving defendants to perform brotherly functions in homes, hospitals, parishes, schools and churches. (*Id.* at ¶¶ 31-32) As a result of this relationship, plaintiff asserts that moving defendants were responsible for supervising Nickerson and that Nickerson was given the power to act on moving defendants' behalf. (*Id.* at ¶¶ 32-34) Plaintiff further contends that all acts done even outside the scope of that power were ratified, affirmed, adopted, acquiesced in, and not repudiated by moving defendants and that such acts were enabled by the agency relationship. (*Id.* at ¶¶ 34-35)

3

As a result of the alleged agency relationship between moving defendants and Nickerson, and the general knowledge attributed to moving defendants concerning Nickerson's acts, plaintiff asserts that moving defendants had a duty to prevent Nickerson from committing acts of sexual abuse on decedent. (*Id.* at ¶¶ 38-40) Plaintiff also asserts that, given the high degree of vulnerability and risk of sexual abuse inherent in the special relationship between decedent and moving defendants, moving defendants had a duty to establish rigorous measures of protection against the sexual abuse of children. (*Id.* at ¶ 39) Plaintiff asserts that these duties were breached by moving defendants because they: (1) failed to warn parishioners, including decedent's parents, about the dangers posed by Nickerson; (2) failed to use reasonable care to supervise and protect children under their care and supervise Nickerson; and (3) failed to warn or disclose Nickerson's acts of abuse to public authorities or the community by engaging in a cover-up of the alleged acts of abuse. (*Id.* at ¶¶ 41-50)

In addition, plaintiff alleges that moving defendants had a fiduciary duty to decedent and decedent's parents, that was formed by the trust that decedent and his parents placed in the faithful integrity of moving defendants and their agents as religious authorities and leaders, and the entrusting of decedent to moving defendants' care. (*Id.* at ¶¶ 51-54)

Plaintiff asserts that the actions of moving defendants in breaching these duties caused decedent injuries including: depression, sexual dysfunction, guilt, emotional pain, fear, fright, shame, anxiety, humiliation, anger, loss of enjoyment of life, lack of self-confidence, insomnia, embarrassment, substance abuse, economic losses, and other temporary or permanent personal injuries. (*Id.* at ¶¶ 57-58)

## III. STANDARD OF REVIEW

Rule 12(b)(2) directs the court to dismiss a case when the court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu*, 495 F. Supp. 2d 444, 448 (D. Del. 2007). Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984).

## IV. ANALYSIS

To establish personal jurisdiction, plaintiff must show, by a preponderance of the evidence, that (1) "there is a statutory basis for jurisdiction under the forum state's long-arm statute" and (2) "the exercise of jurisdiction comports with the defendant's right to due process." *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 590 (D. Del. 2008) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984); *Reach & Assocs. P.C. v. Dencer*, 269 F. Supp. 2d 497, 502 (D. Del. 2003). Delaware state courts interpret Delaware's long-arm statute as "confer[ring] jurisdiction

5

to the maximum extent possible under the Due Process Clause."[1] *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480-81 (Del. 1992); *LaNuova D & B S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764, 768 (D. Del. 1986); *see also Boone v. Oy Partek Ab*, 724 A.2d 1150, 1156-57 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998). However, the jurisdictional analysis "must not be collapsed into a single constitutional inquiry." *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 370 n.3 (D. Del. 2008). Accordingly, personal jurisdiction over a defendant is only proper if it meets the requirements of Delaware's long-arm statute and, separately, comports with due process.

Pursuant to Delaware's long-arm statute, 10 Del. C. § 3104, a court may exercise personal jurisdiction over a defendant where the defendant or its agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside the State by an act or omission outside the State if the person regularly does or solicits business [in the State], engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;[2]

---

[1] The court applies the Delaware long-arm statute consistent with Delaware state courts' interpretations. *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 700 (D. Del. 2001); *see also LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000).

[2] The long-arm statute lists the subsection (c)(4) activities in the disjunctive, and the defendant need only engage in one activity for that subsection to apply. *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 374 (D. Del. 2008) (citing *LaNuova*, 513 A.2d at 769).

6

> (5) Has an interest in, uses or possesses real property in the State; or
>
> (6) Contracts to insure or act as a surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c). Subsections (c)(1), (c)(2), (c)(3), (c)(5), and (c)(6) of the long-arm statute require a showing of specific jurisdiction. *See Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354-55 (D. Del. 2008); *G & G LLC v. White*, 535 F. Supp. 2d 452, 461 (D. Del. 2008); *Dencer*, 269 F. Supp. 2d at 503-05. In contrast, subsection (c)(4) of the long-arm statute requires a showing of general jurisdiction, that is, a showing that defendant or its agent, through more than minimum contacts, is "generally present" in the forum state. *See G & G LLC v. White*, 535 F. Supp. 2d at 461; *Shoemaker*, 556 F. Supp. 2d at 355.

If a defendant is found to be within the reach of the long-arm statute, the court then must analyze whether the exercise of personal jurisdiction comports with due process. *Shoemaker*, 556 F. Supp. 2d at 354. The exercise of personal jurisdiction comports with due process where "the defendant's conduct is such that it should 'reasonably anticipate being haled into court there.'" *L'Athene*, 570 F. Supp. 2d at 591 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Personal jurisdiction may be either specific or general. *Vikoma Int'l, Ltd. v. Oil Stop, Inc.*, 1993 WL 14647, at *2 (D. Del. Jan.14, 1993). For the court to exercise specific personal jurisdiction consistent with due process, plaintiff's cause of action must have arisen from the defendant's activities in the forum state. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Woodson*, 444 U.S. at 297). For the court to

7

exercise general personal jurisdiction consistent with due process, plaintiff's cause of action can be unrelated to the defendant's activities in the forum state so long as the defendant has "continuous and systematic contacts with the forum state." *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1470 (D. Del. 1991); *Vikoma*, 1993 WL 14647, at *2.

Pursuant to 10 Del. C. § 3104(c)(3), plaintiff at bar must assert facts sufficient to establish that moving defendants should be held accountable for Nickerson's alleged tortious conduct in Delaware by virtue of the relationship that existed between them and Nickerson. Plaintiff has failed to do so. Plaintiff's conclusory allegations that Nickerson was employed by moving defendants during the time periods of the alleged abuse are an insufficient basis for exercising personal jurisdiction when such assertions have been challenged. Moving defendants have produced declarations demonstrating that Nickerson was not employed by moving defendants during the relevant time period. (D.I. 7; D.I. 8; D.I. 9; D.I. 10; D.I. 19) In addition, Nickerson, in his answer to the complaint, denies that he was employed by moving defendants during the time of the alleged abuse between 1974 and 1982. (D.I. 20 at ¶¶ 5, 9, 31-37)[3]

Even if the court were to assume that an employment relationship existed at all relevant times, plaintiff has failed to satisfy the requirements of *Bell Atl. Corp. v.*

---

[3] Jurisdictional discovery is appropriate only if a plaintiff "presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). Plaintiff has not satisfied even this modest standard.

8

*Twombly*, 550 U.S. 544, 555 (2007),[4] as to how Nickerson's conduct in Delaware was related to his employment. When an act, such as Nickerson's alleged sexual abuse of decedent, is offered as a basis for jurisdiction, Delaware law requires the act to have occurred within the scope of the agent's (here, Nickerson's) employment and the principal (here, moving defendants) to have directed the act. *See Computer People, Inc. v. Best Int'l Group, Inc.*, Civ. No. 16648, 1999 WL 288119, at *8 (Del. Ch. April 27, 1999) ("Under agency theory of personal jurisdiction, only acts of the agent that are directed by the principal may serve as a basis to assert jurisdiction over the principal."); *Applied Biosystems*, 772 F. Supp. at 1465-66 (in applying Delaware's long-arm statute, the court may consider actions of an agent to the extent they were directed and controlled by the principal). Aside from plaintiff's conclusory statements in this regard, there are no facts asserted which demonstrate that the moving defendants knew of, directed or authorized the tortious conduct that allegedly was committed by Nickerson in Delaware.[5]

Finally, plaintiff asserts no facts suggesting that moving defendants purposefully directed activities toward Delaware or otherwise engaged in conduct such that they

---

[4]"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original).

[5]To the extent that plaintiff is urging upon the court the theory that priests are never "off duty" (i.e., that priests do not have personal lives and, therefore, the scope of their employment includes all of their conduct), that theory is rejected. *See, e.g., Tichenor v. Archdiocese of New Orleans*, 32 F.3d 953, 960 (5th Cir. 1994) (holding that illicit sexual pursuits of priest were not related to duties of priest and did not further any interests of the employer church); *Graham v. McGrath*, 363 F. Supp. 2d 1030, 1034-35 (S.D. Ill. 2005); *Tercero v. Roman Catholic Diocese of Norwich*, 48 P.3d 50, 58 (N.M. 2002).

9

would reasonably have anticipated being haled into court in Delaware. Therefore, the exercise of personal jurisdiction over moving defendants would not comport with due process.[6] *See, e.g., Pecoraro v. Sky Ranch For Boys, Inc.*, 340 F.3d 558, 562-63 (8th Cir. 2003) ("The question, again, is whether the Diocese, based solely on its activity as the Diocese and not on the activity of administrators of related entities acting in other capacities, should reasonably expect to be haled into court in [the forum state].") (alteration in original); *Doe v. Roman Catholic Diocese of Boise, Inc.*, 918 P.2d 17, 23 (N.M. App. 1996) (acts of diocese, not acts of priest, must be considered when deciding if diocese has purposefully availed itself of the protections of the forum state's laws or if it could reasonably anticipate being haled into court in the forum state); *Tercero*, 48 P.3d at 59.

## V. CONCLUSION

For the reasons stated, the motions to dismiss filed by moving defendants (D.I. 16; D.I. 28) are granted.[7]

---

[6] Plaintiffs in similar cases have attempted to correlate the broad scope of the Act, as characterized by the State courts, with a broad jurisdictional reach. More specifically President Judge Vaughn, in *Dingle v. Catholic Diocese of Wilmington*, C.A. No. 07C-09-025 (Del. Super. October 5, 2009), issued a decision from the bench holding that, "if a person was subjected to one sexual act of criminal abuse in this state, he may file suit against his abuser as to all acts of sexual abuse, both the one or ones that occurred in Delaware and ones that occurred in other jurisdictions." *Id.* at 4. That holding does not address the constitutional requirement of due process and has no bearing on that issue. This is especially true when, as in so many of the diversity cases filed in this court, the defendants have no ties whatsoever to the State of Delaware but for the alleged personal conduct of their alleged "agents" and when they are not subject, in their own jurisdictions, to such sweeping statutes as the Act.

[7] Plaintiff counsel's motion to withdraw (D.I. 34) is denied as moot.